UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL R HARO,<br><br>    Plaintiff,<br><br>    v.<br><br>THERM-X OF CALIFORNIA, INC.,<br><br>    Defendant. | Case No. 15-cv-02123-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 21 |

## I. INTRODUCTION

Defendant Therm-X of California, Inc. ("Therm-X") moves to dismiss this employment discrimination action brought by Plaintiff Raul Haro, a former Therm-X employee, under Title VII of the Civil Rights Act of 1964 and under California's Fair Employment and Housing Act ("FEHA"). Haro alleges that Therm-X subjected him to a hostile work environment, discipline, and termination on account of his race and/or national origin as a Hispanic person born in Mexico, and in retaliation for his complaining about discriminatory harassment. The Court held a hearing on August 28, 2015. For the reasons stated below, Therm-X's Motions is GRANTED IN PART, only as to Haro's discrimination claims to the extent that they are based on unspecified "discipline," but is otherwise DENIED.[1] Based on Haro's counsel's representation at the August 28 hearing that Haro does not intend to pursue a claim based on discipline as an adverse employment action, the Court does not grant leave to amend.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Allegations of the First Amended Complaint[2]

Haro is Hispanic and was born in Mexico. 1st Am. Compl. ("FAC," dkt. 14) ¶ 3. In January of 2014, he was hired by Therm-X as a lathe operator, and at all times performed his job satisfactorily. *Id.* ¶¶ 3–4. He was nevertheless treated differently from other employees, and "was disciplined for performance infractions for which non-Hispanic, non-Mexican born employees received no discipline." *Id.* ¶ 5. His coworkers continuously and severely harassed him, physically and verbally, because of his race and/or national origin. *Id.* ¶ 6. One coworker physically assaulted him. *Id.* Haro's "supervisor witnessed some of the harassment, participated in some of the harassment, supported the harassers, and failed to take any steps to stop the harassment." *Id.* ¶ 7. On May 9, 2014, Haro complained of harassment, but his supervisor denied that any harassment occurred. *Id.* ¶¶ 8–9.

"After he complained, [Haro] was subjected to retaliatory discipline, up to and including termination of his employment on August 14, 2014." *Id.* ¶ 10. Therm-X initially told Haro that he was being laid off, but later submitted documents to the Equal Employment Opportunity Commission ("EEOC") indicating that Therm-X had terminated Haro for cause. *Id.* ¶ 11.

Haro filed an administrative complaint with the EEOC and the California Department of Fair Employment and Housing ("DFEH") on or about February 9, 2015. *Id.* ¶ 13. He checked boxes indicating that he complained of discrimination based on race, national origin, sex, and age,[3] as well as retaliation. *Id.* Ex.1. That administrative complaint includes the following factual allegations:

> On May 8, 2014, I told Respondent [Therm-X] that a coworker had physically attacked me and had created a hostile work environment. My coworkers, Brian and Charley, frequently made derogatory jokes and comments to me regarding sex, my national origin, and the races of other individuals. Thom [(Haro's supervisor)] witnessed the incident, but did not intervene or attempt to discipline my coworkers. I am unaware of any remedial action taken upon my complaint.

---

[2] Haro's factual allegations are generally taken as true for the purpose of the present Motion to Dismiss.

[3] Haro has not pursued sex or age discrimination claims in this action. *See generally* Compl. (dkt. 1); FAC.

> I was subjected to disparate treatment. For example, after my complaint, I was disciplined for performance, however employees outside of my protected class are not disciplined for similar or worse infractions/. [sic]
>
> I was terminated on August 14, 2014. The stated reason for my termination was that I was "laid off," however that explanation contradicts the unemployment paperwork submitted to me.

*Id.* Haro received right-to-sue letters from the EEOC and DFEH, each dated March 3, 2015. *Id.* Exs. 2, 3.

The First Amended Complaint includes eight claims: (1) discrimination in violation of Title VII; (2) harassment and creation of a hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) discrimination in violation of FEHA, Cal. Gov't Code § 12940(a); (5) harassment and creation of a hostile work environment in violation of FEHA, Cal. Gov't Code § 12940(j); (6) retaliation in violation of FEHA, Cal. Gov't Code § 12940(h); (7) failure to prevent discrimination and harassment in violation of FEHA, Cal. Gov't Code § 12940(k); and (8) termination in violation of public policy under California law. FAC ¶¶ 18–25. Haro seeks injunctive relief, actual and punitive damages, costs of suit, prejudgment interest, and attorneys' fees. *Id.* at 4 (prayer for relief).

### B.   Procedural History and Parties' Arguments

After receiving his right-to-sue letters, Haro filed his initial Complaint in this Court on May 11, 2015. *See* Compl. Therm-X moved to dismiss on July 10, 2015, *see* dkt. 12, and Haro filed his First Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, *see* FAC. The Court denied Therm-X's first Motion to Dismiss as moot on July 14, 2015. Dkt. 18.

On July 21, 2015, Therm-X moved to dismiss the First Amended Complaint. *See generally* Mot. (dkt. 21). Therm-X argues that Haro has failed to include sufficient factual allegations under the pleading standard described by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Id.* at 5–6. Although Therm-X concedes that the Court will consider the exhibits to the First Amended Complaint in evaluating its sufficiency, it argues that even taking into account the brief factual summary in the

3

1  administrative complaint, Haro has not pled sufficient facts—as opposed to legal conclusions—to
2  satisfy each element of a prima facie case for any of his claims. *See id.* at 6–9. Haro responds that
3  his First Amended Complaint satisfies the Ninth Circuit's pleading standard for employment
4  discrimination claims as set forth in *Sheppard v. David Evans & Associates*, 694 F.3d 1045 (9th
5  Cir. 2012). *See generally* Opp'n (dkt. 28).

**III.   ANALYSIS**

   **A.   Legal Standard**

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient

4

1   factual allegations to "allow[] the court to draw the reasonable inference that the defendant is
2   liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B.   Discrimination Claims

Haro's first and fourth claims are for unlawful discrimination based on race and/or national origin in violation of Title VII and FEHA, respectively. FAC ¶¶ 18, 21.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Similarly, under FEHA, an employer may not "because of the race [or] national origin . . . of any person, . . . discharge the person from employment or . . . discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California anti-discrimination] statutes." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000). The Court therefore analyzes Haro's Title VII and FEHA discrimination claims together.

A plaintiff must generally present "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race or another impermissible criterion." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (quoting *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir. 1982)). Discrimination need not be the only reason for the termination. "It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013).

A plaintiff may rely either on direct evidence that his termination or other adverse employment action was racially motivated, or on circumstantial evidence by showing that: (1) he is a member of a protected class; (2) he was qualified for his position and performed adequately; (3) he experienced adverse employment action; and (4) similarly situated individuals not in his

protected class were treated more favorably, or other circumstances give rise to an inference of discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.,* 615 F.3d 1151, 1156 (9th Cir. 2010). Although a plaintiff does not necessarily need to plead each of these elements specifically in his complaint, *Shepard*, 694 F.3d at 1050 n.2, they nevertheless "help to determine whether Plaintiff has set forth a plausible claim," *see Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012). In cases "where a plaintiff pleads a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss." *Sheppard*, 694 F.3d at 1050 n.2.

In *Sheppard*, an age discrimination case on which Haro relies heavily, the Ninth Circuit held that the plaintiff's complaint pled a plausible prima facie case based on allegations that (1) she was "over the age of forty"; (2) "her performance was satisfactory or better" and "[s]he received consistently good performance reviews"; (3) she "was involuntarily terminated from her position"; and (4) each of her "younger comparators kept their jobs." *Id.* at 1048 (reciting the complaint verbatim); *see also id.* at 1049−50 (holding these allegations sufficient).

### 1. Protected Class

There is no dispute that Haro adequately pleads the first element, that he is member of a protected class based on his Hispanic ethnicity and Mexican national origin. *See* FAC ¶ 3.

### 2. Adequate Performance

The second element is a closer call, as Haro's allegation that he "performed his job satisfactorily," FAC ¶ 4, could be considered merely "a formulaic recitation of [an] element[] of [his] cause of action," and therefore insufficient. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, Haro includes less factual detail than the plaintiff in *Sheppard*, who alleged that she "received consistently good performance reviews." *Sheppard*, 694 F.3d at 1048. On the other hand, in some employment contexts—for example, if an employer does not conduct performance reviews—there might be little if anything more that a plaintiff can allege on this point. Although it is somewhat conclusory, the Court finds this allegation sufficient.

### 3. Adverse Employment Action and Discriminatory Causation

The third and fourth elements, adverse employment action and causation, are inherently

intertwined, because for each purported adverse action, the plaintiff must show both that it is sufficiently consequential to be actionable and that it was based on discrimination. Haro's Opposition identifies two forms of adverse employment action: discipline and termination. *See* Opp'n at 1; FAC ¶¶ 5, 10.[4]

With respect to the former, the First Amended Complaint includes no allegations as to what sort of discipline Haro experienced. Although the Ninth Circuit defines adverse employment actions "broadly," *see Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2001), "[n]ot every employment decision amounts to an adverse employment action," *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (quoting *Stroher v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996)) (considering a Title VII retaliation claim). In order to support a discrimination claim, an employer's action must be "one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)) (alterations in original). Without any description of the alleged discipline in this case, the Court cannot determine whether it plausibly rises to the level of "materially affect[ing]" Haro's employment. *See id.* Accordingly, Haro's discrimination claims are DISMISSED to the extent that they are based on Therm-X's alleged discriminatory discipline. Haro's counsel stated at the August 28 hearing that Haro does not intend to pursue a claim based on discipline as an adverse employment action.

Termination, on the other hand, is specifically identified as an actionable adverse employment action under both Title VII and FEHA. *See* 42 U.S.C. § 2000e–2(a); Cal. Gov't Code § 12940(a). The question here is whether Haro has adequately alleged that he was terminated on account of his race or national origin. Unlike his allegations regarding discipline, and unlike the complaint in *Sheppard*, Haro does not allege that his non-Hispanic or non-Mexican-born coworkers retained their jobs when he was terminated. *See* FAC ¶ 10; *Sheppard*, 694 F.3d at

---

[4] Severe and pervasive harassment can also constitute an adverse employment action, and Haro's Opposition identifies harassment as a basis for his discrimination claim. *See* Opp'n at 1. Because Haro's First Amended Complaint includes separate claims for discriminatory harassment, this Order addresses that theory separately below.

1048−50. The Court notes, however, that discrimination need not be the sole motive for termination to support a claim, *see Nassar*, 133 S. Ct. at 2523, and that dismissing this claim would serve little purpose where the circumstances of and motives behind Haro's termination will be at issue in this case regardless, in the context of his retaliation claim discussed below. Viewed in the context of the complaint as a whole—including allegations that Haro experienced discipline when employees outside his protected classes did not, that he was subject to discriminatory harassment by and with the knowledge of his supervisor, and that Therm-X gave conflicting explanations of his termination, *see* FAC ¶¶ 5, 7, 11—the Court finds it plausible to infer that his termination was based on his race or national origin, and declines to dismiss this claim.

### C. Harassment Claims

Haro's second and fifth claims assert that Therm-X subjected him to a hostile work environment in violation of Title VII and FEHA, based on discriminatory harassment. FAC ¶¶ 19, 23. "[Discriminatory] harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270−71 (2001) (per curiam) (citations and internal quotation marks omitted).

The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (citation omitted). Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* Although a workplace need not be "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers" to be actionable, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond

Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). "Repeated derogatory or humiliating statements, however, can constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).

"To hold her employer liable for [discriminatory] harassment under Title VII, [a plaintiff] must show that she reasonably feared she would be subject to such misconduct in the future because the [employer] encouraged or tolerated [the] harassment." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000). The standards for a hostile work environment claim under FEHA are substantially similar to the standards under Title VII. *See id.* at 923−27 (holding that "we need only assess [the plaintiff's] claim under federal law because Title VII and FEHA operate under the same guiding principles" and analyzing the plaintiffs state and federal harassment claims together).

Here, the harassment allegations of Haro's First Amended Complaint itself are fairly conclusory. *See* FAC ¶ 6 ("Plaintiff's coworkers harassed him because of his race and/or national origin, both physically and verbally. The harassment was continuous, severe, pervasive, and abusive. In one incident Plaintiff was physically assaulted by a coworker."). The administrative complaint attached as Exhibit 1, however, includes further factual allegations, including that Haro's "coworkers, Brian and Charley, frequently made derogatory jokes and comments to [Haro] regarding . . . [Haro's] national origin, and the races of other individuals." *Id.* Ex. 1. Both the First Amended Complaint and the administrative complaint allege that Haro's supervisor was aware of the harassment, failed to intervene, "participated in some of the harassment," and denied that it occurred after Haro complained. *See id.* ¶¶ 7−9 & Ex. 1.

Therm-X argues that Haro's allegations are insufficient because Haro fails to "state what offensive words were purportedly said or actions purportedly taken, by whom, or when," and "[w]ithout these basic facts, [Haro] cannot state a claim for relief that is plausible on its face." Reply (dkt. 31) at 4; *see also* Mot. at 7. Therm-X cites no authority for the proposition that a discriminatory harassment complaint must include such details, and appears to confuse Rule 8(a)'s requirement of a "short and plaint statement of the claim" with the heightened pleading standard of Rule 9(b), which is not applicable here. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.

1993) (holding that in fraud cases, the heightened Rule 9(b) standard requires "such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity").

"Repeated derogatory or humiliating statements . . . can constitute a hostile work environment." *Ray*, 217 F.3d at 1245. Taking into account Exhibit 1 of his First Amended Complaint, Haro presents non-conclusory allegations that he experienced exactly such harassment on account of his national origin. *See* FAC ¶ 6 & Ex. 1. He also alleges that he complained about the harassment and that his supervisor—who participated in some of the harassment and failed to discipline the harassers—denied that it occurred, *id.* ¶¶ 7−10 & Ex. 1, which is adequate to support an inference that Haro "reasonably feared [he] would be subject to such misconduct in the future because the [employer] encouraged or tolerated [the] harassment." *See Brooks*, 229 F.3d at 924. The Court finds these allegations sufficient. To the extent that Therm-X disputes the severity or pervasiveness of the alleged harassment, such issues are better addressed as questions of fact. Therm-X's Motion is therefore DENIED with respect to Haro's harassment claims.

### D. Retaliation Claims

Haro's third and sixth claims allege unlawful retaliatory termination under Title VII and FEHA. Those statutes prohibit an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice . . . , or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); *see also* Cal. Gov't Code § 12940(h). In general, employers' "unlawful employment practices" under the anti-discrimination laws encompass discrimination and harassment based on "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a); *see also* Cal. Gov't Code § 12940(a), (j).

"To succeed on a retaliation claim, [a plaintiff] must first establish a prima facie case [by] demonstrat[ing] (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (citing *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513−14 (9th Cir. 1989)). The Ninth Circuit has long held that "a plaintiff does not need to prove that the employment practice at issue was in fact

unlawful under Title VII," but instead "must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII." *Id.* Filing a complaint with an internal human resources department "that a supervisor has violated Title VII may constitute protected activity for which the employer cannot lawfully retaliate." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009). As for the causation element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S. Ct. at 2528 (2013). The standard for a retaliation claim under FEHA is substantially similar. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042−43 (2005) (setting forth the same three-element test and holding that an employee's reasonable belief that he or she engaged in protected activity is sufficient).

Haro asserts that he engaged in protected activity by complaining about discriminatory harassment, and that Therm-X terminated him as a result of that activity approximately three months later. *See* FAC ¶¶ 8, 10; Opp'n at 2−3. Therm-X argues that the First Amended Complaint does not include sufficient allegations of a causal link between Therm-X's alleged retaliatory animus and Haro's termination. *See* Mot. at 8; Reply at 5. The Ninth Circuit has "held that causation may be established based on the timing of the relevant actions. Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). "[E]vidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Id.* At the pleading stage, Haro's allegations that he was terminated reasonably soon after complaining about harassment, FAC ¶¶ 8, 10, that he "performed his job satisfactorily," *id.* ¶ 4, and that Therm-X offered conflicting explanations of the termination, *id.* ¶ 11, are sufficient to support a plausible inference that he was terminated in retaliation for his complaint. Therm-X's Motion is therefore DENIED as to these claims.

### E. Failure to Prevent Discrimination

Haro's seventh claim asserts that Therm-X failed to take reasonable steps to prevent harassment and discrimination. FAC ¶ 24. Under FEHA, it is unlawful "[f]or an employer . . . to

1  fail to take all reasonable steps necessary to prevent discrimination and harassment . . . from
2  occurring." Cal. Gov't Code § 12940(k).  A plaintiff seeking to recover on a failure-to-prevent-
3  discrimination claim under FEHA must show that "1) plaintiff was subjected to discrimination,
4  harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination,
5  harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or
6  harm." *Adetuyi v. City & Cty. of San Francisco*, 63 F. Supp. 3d 1073, 1092−93 (N.D. Cal. 2014).
7  The employer's duty to prevent harassment and discrimination is affirmative and mandatory.
8  *Northrup Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002).
9  The causation element of a section 12940(k) claim requires an employee show that the
10  discriminatory conduct was a "substantial factor" in causing his harm.  CACI No. 2527; *Alamo v.
11  Practice Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 480 (2013).  Termination from employment is
12  an injury sufficient to support recovery under a section 12940(k) failure to prevent discrimination
13  claim.  *See Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th
14  1004, 1025 (2004).
15          Therm-X initially argues in its Motion that Haro has failed to adequately allege both the
16  first element (discrimination) and the second element (failure to take reasonable steps), but only
17  pursues in its Reply the argument that Haro has not adequately alleged discrimination, harassment,
18  or retaliation.  Mot. at 8; Reply at 5.  As discussed above, the Court finds that Haro's First
19  Amended Complaint adequately states a claim under each of those theories.  To whatever extent
20  Therm-X may still pursue its argument as to the second element, the Court finds Haro's
21  allegations that his supervisor was aware of and participated in the harassment, and that he faced
22  retaliation after complaining about harassment, sufficient at the pleading stage to support a
23  plausible inference that Therm-X failed to take reasonable steps to prevent harassment,
24  discrimination, and retaliation.  Therm-X's Motion is therefore DENIED as to this claim.
25        **F.**    **Termination in Violation of Public Policy**
26          Haro's final claim is for termination in violation of public policy under California law.
27  "[F]or a policy to support a wrongful discharge claim, it must be: (1) delineated in either
28  constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the

1 public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Stevenson v. Superior Court*, 16 Cal. 4th 880, 894 (1997). Therm-X concedes in its Motion that termination in violation of FEHA supports such a claim, *see* Mot. at 9 (citing *Stevenson*, 16 Cal. 4th at 895), and does not address this claim at all in its Reply. Because, as discussed above, the Court holds that Haro adequately states claims for discriminatory and retaliatory termination under FEHA, Therm-X's Motion is DENIED as to this claim as well.

## IV. CONCLUSION

The Court finds Haro's allegations sufficient as to most of his claims. Therm-X's Motion to Dismiss is GRANTED only as to Haro's discrimination claims and only to the extent that those claims are based on vague allegations of "discipline." The Motion is DENIED as to the remainder of Haro's First Amended Complaint, including Haro's discrimination claims based on termination. Based on Haro's counsel's representation at the August 28 hearing that he does not intend to pursue a discrimination claim based on discipline, the Court does not grant leave to amend.

**IT IS SO ORDERED.**

Dated: August 28, 2015

JOSEPH C. SPERO
Chief Magistrate Judge